DAVID J. VAN HAVERMAAT (Cal. Bar No. 175761)
Email: vanhavermaatd@sec.gov
PETER DEL GRECO (Cal. Bar No. 164925)
Email: delgrecop@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiff,<br><br>       vs.<br><br>STEVEN VENTRE, DEDICATED SOUND AND AUDIO, INC., ERIC LOVY f/k/a ERIC BELTRAN and CHOICE EQUITY,<br><br>               Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa(a).

COMPLAINT                                                   1

2.      Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

3.      Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district.  In addition, venue is proper in this district because defendants Steven Ventre and Eric Lovy reside in this district and defendant Dedicated Sound and Audio, Inc. is located in this district.

## SUMMARY

4.      This matter involves a multi-million dollar fraudulent and unregistered securities offering conducted by Dedicated Sound and Audio, Inc. ("DSA"), its founder, president, and CEO, Steven Ventre ("Ventre"), Eric Lovy, formerly known as Eric Beltran ("Lovy"), and Choice Equity, a telemarketing company that Lovy solely controlled and used to solicit investors in DSA.  Defendants represented to investors that they would pay sales commissions of no more than 15%, and retain only licensed broker dealers.  In reality, defendants paid over a third of the funds they raised—or 33.5%—to an unlicensed telemarketing firm, which cold-called investors off of lead lists, with more than half the commissions going directly to Lovy.

5.      From January 2013 to September 2014, the defendants raised more than $4.6 million from more than 85 investors through an unregistered offer and sale of DSA's securities, most of which were offered and sold by Choice Equity.

6.      Ventre and Lovy collaborated to draft and disseminate a private placement memorandum ("PPM") that expressly and falsely stated that DSA would pay no more than a 15% sales commission to "licensed broker/dealers and other qualified personnel."

7.      DSA actually paid $1.56 million of the amount raised, or roughly 33.5%,

in sales commissions to Choice Equity.

8.     Choice Equity, which is not a registered broker-dealer, remitted $870,850 of the $1.56 million it received from DSA directly to Lovy, who was not a registered broker-dealer or associated with a registered broker-dealer.

9.     By lying to investors about the amounts of sales commissions they paid and about the qualifications of the selling agents, Ventre and DSA violated the antifraud provisions of Section 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder, and Lovy aided and abetted those violations.  In addition, each of the defendants violated the securities registration provisions of Sections 5(a) and 5(c) of the Securities Act.  Lovy and Choice Equity also violated the broker-dealer registration provisions of Section 15(a) of the Exchange Act.

10.     With this action, the SEC seeks permanent injunctions, disgorgement of ill-gotten gains with prejudgment interest, and civil penalties against all of the defendants.

## THE DEFENDANTS

11.     **Steven Ventre**, age 52, is a resident of Lake Forest, California.  Ventre founded DSA and has been its president and CEO since sometime between September 2012 and 2013.  He is not registered with the SEC in any capacity.

12.     **Dedicated Sound and Audio, Inc.** is a California corporation formed in September 2012 and located in Lake Forest, California.

13.     **Eric Lovy f/k/a Eric Beltran**, age 45, is a resident of Huntington Beach, California.  Lovy solely controls Choice Equity and is the sole signatory on its bank accounts.  He is not registered with the SEC in any capacity and is not associated with a registered broker-dealer.  In 2002, the California Department of Corporations issued a Desist-and-Refrain Order against Lovy (then known as Eric Beltran) for conducting a general solicitation of the unregistered securities of an issuer and finding that he had made misrepresentations to investors in the course of the offering.  Lovy changed his name after the issuance of the Desist-and-Refrain Order against him.  In a separate

enforcement matter, Lovy, in 2014, consented to an order by the California Department of Business Oversight that he desist and refrain from offering, selling, effecting any transaction in, or inducing or attempting to induce the purchase or sale of any security, in California, and further agreed to disgorge $15,250 in ill-gotten profits.

14.    **Choice Equity** is a Wyoming company located in Cheyenne, Wyoming and controlled by Lovy.  Choice Equity has never been registered with the SEC in any capacity.

## THE ALLEGATIONS

**A.    The Defendants' Fraudulent Offer and Sale of DSA Securities**

15.    Ventre formed DSA in 2012 to manufacture three product lines: flat panel loudspeakers, home audio speakers with artwork facades suitable for framing, and removable phone-case speaker phones.  Due to economic constraints, DSA quickly focused most of its attention on the home audio speakers, which were promoted under the name "Sound Art."

16.    Ventre was responsible for the day-to-day operations of DSA and he exercised sole control over DSA's bank accounts, as the only person with signatory authority.

17.    In January 2013, DSA commenced the offer and sale of up to $5 million of its Series A Preferred Stock ("Preferred Stock").  Although Ventre personally contacted several investors with whom he had a prior relationship, most of the offering was conducted by Choice Equity, with which DSA contracted to cold-call potential investors across the United States from telemarketing centers in southern California.

18.    In the course of soliciting investments from residents of multiple states, Choice Equity sent DSA's PPM to investors and potential investors via the U.S. mails.

19.    The creation of DSA's PPM was a collaborative effort between Lovy and Ventre.  Both men played a substantial role in its drafting.  Ventre and Lovy both reviewed, commented upon, and had their comments implemented in drafts of DSA's PPM.

20.     The PPM used in connection with the offering of DSA's Preferred Stock contained the following representation:

> A 15% sales commission will be paid to participating (FINRA) licensed broker/dealers and other qualified Personnel.  See 'Use of Proceeds.'

21.     The PPM's 'Use of Proceeds' section attributed up to $750,000 of the $5 million in offering proceeds to "Selling Expenses" and contained a footnote that stated:

> Sales commissions to not exceed 15% may be paid to registered broker/dealers or other qualified individuals.

22.     Through September 2014, DSA raised more than $4.6 million from more than 85 investors in at least 19 states, primarily through the sale of its Preferred Stock and also through the issuance of promissory notes, almost all of which were convertible, and most of which were in fact converted, into Preferred Stock.

23.     During that same period, Ventre caused DSA to pay Choice Equity $1.56 million, or roughly 33.5% of the amount that was raised from its sale of DSA's securities.  Choice Equity remitted $870,850 of that amount to Lovy.

24.     DSA's PPM contained two material misrepresentations:  First, DSA paid Choice Equity a sales commission of more than 33%, not 15% as represented in the PPM.  Second, contrary to the representations in the PPM, neither Choice Equity nor Lovy were registered broker-dealers, and neither Lovy nor any of Choice Equity's employees were associated with a registered broker-dealer.

25.     The defendants' misrepresentations were material, as they were central to investor's decisions to invest, and to their decisions to keep their money invested in DSA.  Investors would have considered it important to their investment decision to know that Ventre and DSA were paying more in sales commissions than had been represented to investors, and that defendants' sales agents lacked the qualifications or licensing that the PPM described.

26.     Ventre and DSA acted with scienter.  Ventre and DSA knew, or were

COMPLAINT                                        5

reckless in not knowing, that the representations contained in the PPM concerning the size of the sales commissions and the qualifications of the individuals offering and selling DSA securities were materially false and misleading.

27.    In addition, Ventre and DSA failed to exercise reasonable care by making materially misleading representations about the size of the sales commissions and the qualifications of the individuals offering and selling DSA securities.

**B.    DSA and Ventre Obtained Money By Means of the Fraud**

28.    Ventre and DSA received money by means of the materially false statements alleged above in the offer and sale of DSA securities.

29.    DSA received money from investors through the sale of its securities.

30.    Ventre personally profited from the defendants' fraudulent conduct. During the relevant period, checks of more than $55,000 payable to Ventre and checks of more than $87,000 payable to cash were drawn on DSA accounts, and more than $115,000 was transferred from DSA's accounts to Ventre's accounts.  During the same period, almost $100,000 was withdrawn from DSA's accounts in cash.  Moreover, DSA's accounts reflected more than $700,000 in debit card purchases, many of which were for fast food, gasoline, and other items of a personal, rather than business, nature.

**C.    Lovy Aided and Abetted DSA's and Ventre's Antifraud Violations**

31.    Lovy knew, or was reckless in not knowing, that his role was part of DSA's and Ventre's improper activity.   Lovy co-drafted DSA's PPM with Ventre, knowing that he would disseminate the PPM to investors.  Lovy received commissions that he knew or was reckless in not knowing exceeded the amount disclosed in the PPM.  He also knew or was reckless in not knowing that the PPM's description of the sales agents' licensing and qualifications were materially misleading.

32.    As the conduit through which most of DSA's securities were offered and sold to the public, and through which DSA's PPM was disseminated to investors and potential investors, Lovy substantially assisted DSA and Ventre in their violations of the antifraud provisions of the federal securities laws.

1

**D.    The Defendants' Registration Violations**

2    33.    DSA's Preferred Stock and its promissory notes are securities under the

3  federal securities laws.  Investor monies were pooled for the purpose of funding

4  DSA's audio component production operations.  DSA's PPM stated that the

5  company's success was "substantially dependent" on the performance of its

6  management.  Its promissory notes, which the PPM referred to as "securities,"

7  promised interest of 9% annually, and were offered to investors in numerous states.

8  Prospective investors were cold called by Lovy and Choice Equity using lead lists.

9    34.    Both DSA's Preferred Stock and its notes offering were part of a single

10  financing scheme to fund DSA's audio component production operations.  The

11  offerings ran concurrently and the proceeds raised by the offerings were commingled.

12    35.    The defendants were each necessary participants in, and played a

13  substantial role in, the offer and sale of DSA's securities.  Ventre and Lovy co-wrote

14  the PPM that was sent to prospective investors.  Lovy and Choice Equity directly

15  solicited most of the investors and Ventre solicited the remainder.  DSA, as the issuer,

16  directly offered and sold the securities.

17    36.    The defendants' offer and sale of DSA's Preferred Stock and promissory

18  notes were never registered with the SEC.

19    37.    During the period of the offer and sale of DSA's securities, Choice Equity

20  was not registered with the SEC as a broker or dealer.

21    38.    During the period of the offer and sale of DSA's securities, Lovy was not

22  associated with a broker or dealer and was not registered as a broker-dealer with the

23  SEC.

24    39.    Choice Equity and Lovy both effected or induced the sale of securities

25  while not registered with the SEC as a broker or dealer or affiliated with a broker-dealer

26  registered with the SEC.

27    40.    Choice Equity and Lovy were actively engaged in promoting and selling

28  DSA's securities to investors by calling and emailing potential investors, and by

COMPLAINT                                     7

advising investors to purchase DSA's securities.

41.     Choice Equity and Lovy were paid transaction-based compensation for selling DSA's securities.

## FIRST CLAIM FOR RELIEF

**Fraud in the Connection with the Purchase and Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b)**

**(Against Defendants Ventre and DSA and, alternatively, against Defendant Ventre as a control person under Section 20(a) of the Exchange Act)**

42.     The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

43.     As alleged above in paragraphs 4 through 27, among other allegations, Defendants Ventre and DSA made material misrepresentations and omissions to investors and prospective investors regarding the payment of commissions to Choice Equity and Lovy, and the fact that neither Choice Equity nor Lovy was a registered broker-dealer, and neither Lovy nor any of Choice Equity's employees was associated with a registered broker-dealer.

44.     By engaging in the conduct described above, Defendants Ventre and DSA, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter, made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

45.     By engaging in the conduct described above, Defendants Ventre and DSA violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

46.     Defendant Ventre is a control person of Defendant DSA, because he possesses, directly or indirectly, the power to direct or cause the direction of the

management and policies of DSA.  Accordingly, pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), Defendant Ventre is liable to same extent as Defendant DSA is liable for its violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder.

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a)(2) of the Securities Act

### (Against Defendants Ventre and DSA)

47.     The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

48.     As alleged above in paragraphs 4 through 30, among other allegations, Defendants Ventre and DSA received money by means of untrue statements and omissions regarding the payment of commissions to Choice Equity and Lovy, and the fact that neither Choice Equity nor Lovy was a registered broker-dealer, and neither Lovy nor any of Choice Equity's employees was associated with a registered broker-dealer.

49.     By engaging in the conduct described above, Defendants Ventre and DSA, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly, with scienter or negligently, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50.     By engaging in the conduct described above, Defendants Ventre and DSA violated, and unless enjoined will continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## <u>THIRD CLAIM FOR RELIEF</u>

### Unregistered Offer and Sale of Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

### (Against All Defendants)

51.     The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

52.     As alleged above in paragraphs 4 through 22 and 33 through 36, among other allegations, Defendants Ventre, DSA, Lovy, and Choice Equity directly or indirectly offered and sold securities of DSA in an offering or offerings that were not registered with the SEC.

53.     By engaging in the conduct described above, Defendants Ventre, DSA, Lovy, and Choice Equity, and each of them, directly or indirectly, singly and in concert with others, have made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

54.     By engaging in the conduct described above, Defendants Ventre, DSA, Lovy, and Choice Equity have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## <u>FOURTH CLAIM FOR RELIEF</u>

### Unregistered Broker-Dealer

### Violations of Section 15(a) of the Exchange Act

### (Against Defendants Lovy and Choice Equity)

55.     The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

56.     As alleged above in paragraphs 4 through 22 and 37 through 41, among

other allegations, Defendants Lovy and Choice Equity acted as unregistered broker-dealers by, among other things, soliciting investors and effectuating transactions in DSA securities for transaction-based compensation.

57.     By engaging in the conduct described above, Defendants Lovy and Choice Equity, and each of them, made use of the mails and means or instrumentalities of interstate commerce to effect transactions in, and induced and attempted to induce the purchase or sale of, securities (other than exempted securities or commercial paper, bankers' acceptances, or commercial bills) without being registered with the SEC in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b), and without complying with any exemptions promulgated pursuant to Section 15(a)(2) of the Exchange Act, 15 U.S.C. § 78o(a)(2).

58.     By engaging in the conduct described above, Defendants Lovy and Choice Equity have violated, and unless enjoined will continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## FIFTH CLAIM FOR RELIEF

### Aiding and Abetting Violations of
### Section 17(a)(2) of the Securities Act and
### Section 10(b) of the Exchange Act and Rule 10b-5(b)
### (against Defendant Lovy)

59.     The SEC realleges and incorporates by reference paragraphs 1 through 41 above.

60.     As alleged above in paragraphs 4 through 30, among other allegations, Defendants Ventre and DSA received money by means of untrue statements and omissions regarding the payment of commissions to Choice Equity and Lovy, and the facts that neither Choice Equity nor Lovy was a registered broker-dealer and neither Lovy nor any of Choice Equity's employees was associated with a registered broker-dealer.

61.     As alleged above in paragraphs 4 through 32, among other allegations,

pursuant to Section 15(b) of the Securities Act, 15 U.S.C. § 77o(b), Defendant Lovy knowingly or recklessly provided substantial assistance to, and thereby aided and abetted DSA and Ventre in their violations of, and unless enjoined will continue to aid and abet violations of, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

62.    As alleged above in paragraphs 4 through 27, among other allegations, Defendants Ventre and DSA made material misrepresentations and omissions to investors and prospective investors regarding the payment of commissions to Choice Equity and Lovy, and the fact that neither Choice Equity nor Lovy was a registered broker-dealer, and neither Lovy nor any of Choice Equity's employees was associated with a registered broker-dealer.

63.    As alleged above in paragraphs 4 through 27, 31, and 32, among other allegations, pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), Defendant Lovy knowingly or recklessly provided substantial assistance to, and thereby aided and abetted DSA and Ventre in their violations of, and unless enjoined will continue to aid and abet violations of, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

### **PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants Ventre, DSA, Lovy, and Choice Equity committed the alleged violations.

### II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants Ventre, DSA, and Lovy, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities

Act [15 U.S.C. §77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### III.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants Ventre, DSA, Lovy, and Choice Equity, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) & 77e(c)].

### IV.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants Lovy and Choice Equity, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

### V.

Order Defendants Ventre, DSA, Lovy, and Choice Equity to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon.

### VI.

Order Defendants Ventre, DSA, Lovy, and Choice Equity to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

1

## VIII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: February 26, 2018                    */s/ Peter Del Greco*

David J. Van Havermaat
Peter Del Greco
Attorneys for Plaintiff
Securities and Exchange Commission